IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM L. McVICKER, | ) CIVIL ACTION |
| Plaintiff, | ) No.: 2:09-cv-00436 |
| vs. | ) |
| CHRISTOPHER W. KING, Jefferson Hills Borough Council Member in his official and individual capacity, JAMES A. WEBER, Jefferson Hills Borough Council Member in his official and individual capacity, JANICE R. CMAR, Jefferson Hills Borough Council Member in her official and individual capacity, and KATHLEEN REYNOLDS, Jefferson Hills Borough Council Member in her official and individual capacity, and THE BOROUGH OF JEFFERSON HILLS, | ) |
| Defendants. | ) |

## TRIB TOTAL MEDIA'S BRIEF IN OPPOSITION TO MOTION TO ENFORCE SUBPOENA

Trib Total Media, Inc., by its undersigned counsel, respectfully submits the following Brief in Opposition to Plaintiff's Motion to Enforce Subpoena.

### INTRODUCTION

Anonymous political debate reflects "an honorable tradition of advocacy and dissent" in the United States. *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 357, 115 S. Ct. 1511, 1524 (1995). The use of pseudonyms that has become the norm on Internet discussion boards did not start with the creation of the Internet, but stretches across all of American history, notably including the

civil rights movement, the abolitionist press, the Federalist Papers, and pamphlets, like *Common Sense*, that inspired the American colonies. The Supreme Court's consistent defense of the First Amendment right to speak and remain anonymous demonstrates an understanding that some things can be said "either anonymously or not at all." *Talley v. State of California*, 362 U.S. 60, 64,80 S. Ct. 536, 538(1960).

Trib Total Media, Inc., the owner of several newspapers including the Pittsburgh *Tribune-Review*, hosts a number of interactive discussion boards on the Internet, typically focused on particular regions in Southwestern Pennsylvania. One of those discussion boards -- the one that is at issue in the present case -- is known as "Your South Hills.com."

In the Spring and Summer of 2008, a number of people using Your South Hills.com were engaged in an ongoing discussion of the government of Jefferson Hills Borough. All of these individuals were posting their comments to the discussion board using pseudonyms or "screen names." Some of the writers appeared to support the Borough government while others were critical of it, but in every instance their comments discuss matters that had previously been published in area newspaper articles.

The Complaint in this discrimination case -- as well as some of the commentary posted anonymously on My South Hills.com -- alleges that the individual Defendants have been using their new-found majority on the Jefferson Hills Borough Council to punish those who disagree with them.

It is into this maelstrom that Plaintiff now seeks to unmask nine of the

anonymous participants in the Internet discussions. It is worth noting that these nine participants chose to remain anonymous even as another formerly anonymous participant decided -- in mid-2008 -- to reveal his identity.[1] In other words, the nine participants who now face an involuntary unmasking appear to have shown through their actions that they value the right afforded to them by the First Amendment *even when the topic of abandoning anonymity was expressly raised.*

Plaintiff argues that the writers may be Borough employees (including perhaps one or more of the Defendants) or otherwise have inside knowledge about Borough events. Their posted commentaries do not bear out this speculation, however, as all of the comments address matters that had previously been published in newspaper articles about the Borough.

Plaintiff suggests that some of what the writers know may contradict testimony of the Defendants as to when they began discussing the termination of Plaintiff. But the reason for this suggestion is not that anyone posted comments about firing McVicker in mid-2008, but rather that comments were posted about the earlier purchase of McVicker's home by the Borough, a topic that had generated newspaper articles and public controversy before the relevant Internet messages were posted.

---

[1] The user with the screen name "Starship Trooper" revealed himself to be an individual named Robert Marlow, whom the undersigned believes resides and operates a small business in Jefferson Hills. Thus, the leap of logic that leads Plaintiff to conclude that the nine anonymous posters might have inside information that would be discoverable in this case does not appear to have proved true in the case of Starship Trooper.

3

Finally, Plaintiff suggests that some of what the writers know may relate to other retaliatory actions by Borough Council against individuals other than Plaintiff. Again, however, all of the discussion does no more than comment on reports that were already published in newspapers.

Trib Total Media, Inc. objects to the attempt to strip anonymity from those who choose to engage in political discussion and debate on its web site. This objection is grounded in the First Amendment right to engage in anonymous speech, as well as in the closely related right of news organizations to protect the identities of their anonymous sources. Both areas of the law have developed similar rules to deal with attempts to strip individuals of anonymity.

## DISCUSSION

In *Enterline v. Pocono Medical Center,* 2008 WL 5192386 (M.D. Pa. 2008), the Plaintiff in a hostile work environment case sought to enforce a subpoena against the Pocono *Record* demanding the identities of anonymous posters who had made comments about the Defendant doctor on the paper's website following the publication of an article concerning the lawsuit.

The *Enterline* Court first determined that the newspaper had standing to raise a First Amendment challenge on behalf of the users of its website. The Court concluded that the newspaper had sufficient injury-in-fact because a failure to protect the First Amendment rights of its users would affect its ability to maintain and expand its readership base. *Id.,* at *3. The Court further found that:

> anonymous commentators face practical obstacles preventing the commentators from asserting their rights on behalf of themselves. In order for these third party commentators to adequately pursue their First Amendment rights before this Court, the commentators would first need to be identified. This loss of anonymity is the very harm that Respondent seeks to prevent.

*Id.*

Third, the Court found that the newspaper would adequately frame and present the issues. *Id.,* at *4. In addition to the factors cited in the *Enterline* case on this point, the undersigned notes (as Plaintiff recognizes) that the undersigned and his law firm have handled what may be the most prominent anonymity case in Pennsylvania law, *Melvin v. Doe,* 575 Pa. 264, 836 A.2d 42 (2002), and numerous similar cases.

On the merits, the Middle District Court determined that the identity of a third party witness who has posted anonymously on a topic relevant to a civil suit should be disclosed only after the application of a four-part test. The Court adopted the test from an emerging consensus of courts around the country dealing with the somewhat different question of when to unmask anonymous writers for the purpose of permitting a plaintiff to sue those writers for defamatory remarks.

> The Court stated:
>
> The Court will consider four factors in determining whether the subpoena should issue. These are whether: (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

Quoting *Doe v. 2theMart.com*, 140 F.Supp.2d 1088, 1095 (W.D.Wash.2001).

The Court recognized that disclosing the identity of a third party who had not posted anything defamatory or injurious was yet a more serious matter than unmasking a potential wrongdoer, and added a further requirement that such identities would be disclosed "only ... in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id*. This is similar to the approach taken by the Arizona Court of Appeals in *Mobilisa, Inc. v. Doe*, 217 Ariz. 103, 111, 170 P.3d 712, 720 (2007) ("the anonymous speaker may be a non-party witness along with a number of known witnesses with the same information... [I]n such a case [the requesting party] may have only a slight need for the anonymous party's identity").

The *Enterline* Court relied upon the fourth factor in denying enforcement of the subpoena, finding that it was "not persuaded that the identity of these anonymous posters is necessary for the Plaintiff to effectively pursue her claims." 2008 WL. 5192386 at *6. The Court further stated:

> In the comments that they posted, many of these individuals identify themselves as employees in the Emergency Room at the Pocono Medical Center, as formerly filing complaints against Dr. Cooks, or otherwise being closely associated with the Plaintiff or Defendant. Accordingly, the Court believes that much of the information the Plaintiff hopes to uncover after learning the identities of commentators on the Newspaper's website is information that will be obtained through normal, anticipated forms of discovery, including depositions of Ms. Enterline's co-workers and other individuals associated with Dr. Cooks and the Pocono Medical Center.

*Id*.

The Court further noted that it did "not believe that this is an exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id.*

Trib Total Media, Inc. believes that this Court could also deny enforcement of the subpoena based on the third element of the *Enterline* test, in that the information sought here is not directly and materially relevant as it arguably was in *Enterline*. Here, it appears that the information is sought for impeachment purposes or relates to victims of retaliation other than Plaintiff himself.

With regard to the news media's privilege to protect confidential sources, the Third Circuit has held that to overcome this privilege:

> First, the movant must demonstrate that he has made an effort to obtain the information from other sources. Second, he must demonstrate that the only access to the information sought is through the journalist and her sources. Finally, the movant must persuade the court that the information sought is crucial to the claim.

*United States v. Criden*, 633 F.2d 346, 358-59 (1980).

Thus, under both *Enterline* and *Criden*, identity can be disclosed only if the information sought is important to the claim and unavailable elsewhere.

In the present case, none of the information mentioned by any of the relevant writers goes beyond widely published information from newspaper articles (see Exhibit "A" hereto). The information is not centrally relevant to Plaintiff's claim, but goes to impeachment (where, it appears, impeachment is already available) or to other victims than Plaintiff.

Finally, and perhaps most importantly, if the writers at issue are not Borough employees or officials, and have no knowledge beyond what they have

read in the newspaper, then stripping them of their right of anonymity would serve no useful purpose except to intrude upon their privacy and potentially expose them to the very kinds of retaliation that the Plaintiff alleges the Defendants have engaged in.

On the other hand, if any one or more of the anonymous writers at issue are Borough employees or officials, then precisely as in *Enterline*, the Plaintiff can explore any relevant information they possess through ordinary channels of discovery.

Quite simply, exposing the identities of the anonymous writers under the circumstances of this case would set a precedent permitting the identity of every citizen who reads about government affairs in the newspaper and posts lawful, non-defamatory comment on the Internet under a pseudonym, whenever one of the subjects of discussion sues or is sued. This would be an intolerable abrogation of an important First Amendment right.

WHEREFORE, Trib Total Media, Inc. respectfully requests that the Motion be denied.

Respectfully submitted,

/s/ Ronald D. Barber

Pa. ID No. 52734

STRASSURGER McKENNA
GUTNICK & GEFSKY

Suite 2200
Four Gateway Center
444 Liberty Avenue
Pittsburgh, PA 15222

(412) 281-5423
Fax (412) 281-8264
rbarber@smgglaw.com

*Attorney for Trib Total Media, Inc.*